ACCEPTED
15-25-00155-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:21 PM
CHRISTOPHER A. PRINE
CLERK

FIFTEENTH CIRCUIT COURT OF APPEALS
15-25-00155-CV

IN THE FIFTEENTH COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:21:02 PM
CHRISTOPHER A. PRINE
Clerk

AUSTIN, TEXAS

Cause No. 15-25-00155-CV

(On Transfer from the Third Court of Appeals)
Cause No. 03-25-00416-CV

NEIL GEORGE SWITKOWSKI, Appellant

v.

THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS,
Appellee

# APPELLANT'S REPLY BRIEF TO THE OFFICE OF THE ATTORNEY GENERAL'S BRIEF OF APPELLEE

**Filed Pursuant to Texas Rules of Appellate Procedure 38.3 and 57.2**

*(Reply addressing standing, constitutional certification, and jurisdictional fraud under Title IV-D enforcement)*

# Table of Contents

Table of Authorities ........................................................................................................3

To the honorable Justices of the Fifteenth Circuit Court of Appeals;.......................8

Statement of the Case- Background...........................................................................10

Chronological Summary of Preserved Challenges ..................................................10

Current Posture ..........................................................................................................10

Statement of Issues Presented ..................................................................................11

Appellee's Core Arguments and Appellant's Rebuttals .........................................11

1. The Trial Court's Dismissal under § 231.016 Was Error as a Matter of Law ...............12

1.1 Absence of a reporters record prevents a meaningful review dismissal .........13

2. The Office of the Attorney General Lacked Standing or Jurisdiction under Title IV-D ....15

2.2 Fraud Upon the Court Through False Jurisdictional Representation ...............16

1

SWITKOWSKI- APPELLANT'S REPLY BRIEF TO
THE OFFICE OF THE ATTORNEY GENERAL'S BRIEF OF APPELLEE

2.3 Misrepresentation of Representation: The "Child's Interest" as a Jurisdictional Fraud ................... 17

2.4 Due Process and Constitutional Integrity ......................................................................... 18

3. The Constitutional Issues Are Squarely Justiciable ............................................................ 18

Argument: It is all Fruit of the Same Poisoned Tree .............................................................. 20

The Federal Government's Lack of Jurisdiction Over Domestic Relations .......................................... 22

Conclusion and Prayer for Relief ....................................................................................... 25

Appendix A: Chronological Summary of Preserved Challenges .......................................................... 30

Appendix B: Constitutional Defects and Proposed Remedies ............................................................ 37

SWITKOWSKI- APPELLANT'S REPLY BRIEF TO
THE OFFICE OF THE ATTORNEY GENERAL'S BRIEF OF APPELLEE

# Table of Authorities

**Cases**

- **Albert v. City of Dallas**, 354 S.W.3d 368, 374 (Tex. 2011) – Confirms that sovereign immunity does not bar ultra vires claims against state officials acting beyond statutory authority.

- **Blessing v. Freestone**, 520 U.S. 329, 343–44 (1997) – Holds that Title IV-D creates no enforceable individual rights and no fiduciary duty to parents or children.

- **Brown v. Todd**, 53 S.W.3d 297, 305 (Tex. 2001) – Establishes that Texas courts may not issue advisory opinions and must have justiciable controversy grounded in standing.

- **N.Y. State Rifle & Pistol Ass'n v. Bruen**, 142 S. Ct. 2111 (2022) – Articulates the "historical tradition" test for constitutional analysis under the Second Amendment, applied here to review state authority over marriage and family law.

- **City of El Paso v. Heinrich**, 284 S.W.3d 366 (Tex. 2009) – Defines scope of ultra vires actions and clarifies that officials may be sued to restrain acts beyond lawful authority.

- **City of Elsa v. M.A.L.**, 226 S.W.3d 390, 392 (Tex. 2007) – Reiterates that standing is a component of subject-matter jurisdiction that must exist at every stage of a proceeding.

- **DaimlerChrysler Corp. v. Cuno**, 547 U.S. 332, 341 (2006) – Reinforces federal standing doctrine; courts cannot decide abstract disputes without concrete injury.

- **DeSylva v. Ballentine**, 351 U.S. 570 (1956) – Recognizes family relationships as matters of state law, illustrating traditional state control before federal intrusion.

- **Ex parte Young**, 209 U.S. 123 (1908) – Authorizes injunctive relief against state officials violating federal law; foundational precedent for ultra vires review.

- **FW/PBS, Inc. v. City of Dallas**, 493 U.S. 215, 231 (1990) – Confirms that procedural safeguards are essential to prevent arbitrary government action.

- **Hazel-Atlas Glass Co. v. Hartford-Empire Co.**, 322 U.S. 238 (1944) – Establishes courts' inherent power to set aside judgments obtained through fraud upon the United States.

- **In re Burrus**, 136 U.S. 586 (1890) – Clarifies that domestic-relations jurisdiction traditionally belongs to the states, framing the federalism boundary relevant to Title IV-D.

- **Loving v. Virginia**, 388 U.S. 1 (1967) – Declares marriage a fundamental right protected by due process and equal protection; strikes down state racial-marriage restrictions.

- **Marbury v. Madison**, 5 U.S. (1 Cranch) 137, 176–80 (1803) – Establishes judicial review: courts must nullify acts repugnant to the Constitution.

- **Moore v. City of East Cleveland**, 431 U.S. 494 (1977) – Recognizes family integrity and cohabitation as fundamental liberty interests.

- **New York v. United States**, 505 U.S. 144 (1992) – Prohibits federal commandeering of state governments; supports argument against compelled federal enforcement schemes.

- **Obergefell v. Hodges**, 576 U.S. 644 (2015) – Extends marriage equality and reaffirms that marriage is a liberty interest protected by the Fourteenth Amendment.

- **Palmore v. Sidoti**, 466 U.S. 429 (1984) – Forbids state reliance on private biases in child-custody decisions; underscores equal-protection obligations.

- **Printz v. United States**, 521 U.S. 898 (1997) – Reaffirms anti-commandeering principle limiting federal control over state executive officers.

- **Santosky v. Kramer**, 455 U.S. 745, 753–54 (1982) – Requires clear-and-convincing evidence before termination of parental rights; due-process cornerstone in family law.

- **Somerset v. Stewart**, 98 Eng. Rep. 499 (K.B. 1772) – Lord Mansfield's ruling that slavery is unsupported by common law; foundation for the principle that liberty is presumed.

- **Stanley v. Illinois**, 405 U.S. 645 (1972) – Recognizes an unwed father's constitutional right to custody and family integrity.

- **South Dakota v. Dole**, 483 U.S. 203 (1987) – Defines limits of federal spending power under the Spending Clause; relevant to conditional Title IV-D funding.

- **Thomas v. Long**, 207 S.W.3d 334, 339 (Tex. 2006) – Holds that standing and subject-matter jurisdiction are questions of law reviewed de novo.

- **Troxel v. Granville**, 530 U.S. 57 (2000) – Reaffirms parents' fundamental right to make decisions concerning care, custody, and control of their children.

- **Turner v. Rogers**, 564 U.S. 431, 447–48 (2011) – Holds that due process requires procedural safeguards before incarceration for child-support contempt.

- **Turner v. Safley**, 482 U.S. 78 (1987) – Recognizes the constitutional right to marry even for prisoners, reinforcing marriage as a fundamental liberty.

- **Tex. Ass'n of Bus. v. Tex. Air Control Bd.**, 852 S.W.2d 440, 443 (Tex. 1993) – Establishes that standing is a component of subject-matter jurisdiction under Texas law.

- **Tex. Dep't of Transp. v. City of Sunset Valley**, 146 S.W.3d 637, 642 (Tex. 2004) – Clarifies the standards for statutory waiver of sovereign immunity.

- **United States v. Windsor**, 570 U.S. 744 (2013) – Invalidates federal Defense of Marriage Act; reaffirms state sovereignty and equal dignity in domestic relations.

- **Yick Wo v. Hopkins**, 118 U.S. 356 (1886) – Landmark equal-protection case holding that facially neutral laws applied unequally violate the Fourteenth Amendment.

## Statutes, Codes & Rules

## United States Code

- **18 U.S.C. § 241** – Criminalizes conspiracy to deprive persons of constitutional rights.

- **18 U.S.C. § 242** – Criminalizes deprivation of rights under color of law by government actors.

- **42 U.S.C. § 1983** – Provides civil cause of action for constitutional violations by state officials.

- **42 U.S.C. §§ 651 et seq. (Title IV-D)** – Establishes the federal child-support enforcement program and its funding framework.

- **42 U.S.C. § 658a** – Authorizes federal incentive payments to states for Title IV-D performance, relevant to financial conflicts of interest.

## Texas Statutes

- **Tex. Civ. Prac. & Rem. Code § 13.001(b)** – Defines frivolous or groundless suits; governs sanctions in civil actions.

- **Tex. Fam. Code § 231.016** – Authorizes dismissal of certain Title IV-D actions; basis of trial-court order challenged on appeal.

- **Tex. Fam. Code §§ 231.101–.104** – Limits OAG standing to cases involving expended public funds or assigned rights.

- **Tex. Fam. Code § 231.302(b)** – Addresses federal incentive payments and OAG performance reporting.

- **Tex. Gov't Code § 2101.041** – Requires accurate accounting and reporting of state and federal funds.

- **Tex. Penal Code § 25.03** – Defines the felony offense of interference with child custody; core to Appellee's ongoing violations.

## Texas Rules

- **Tex. R. App. P. 9.4(i)(3)** – Governs appellate brief word-count certification and compliance requirements.

## Constitutional Provisions

- **U.S. Const. art. I, § 8, cl. 1 (Spending Clause)** – Grants Congress authority to attach conditions to federal funds; central to analysis of Title IV-D funding.

- **U.S. Const. amend. XIV** – Guarantees due process and equal protection; foundational for parental-rights and selective-enforcement claims.

- **Tex. Const. art. I, § 13 (Open Courts Clause)** – Ensures every person's right to seek judicial redress without denial or delay.

- **Tex. Const. art. I, § 19 (Due Course Clause)** – Texas counterpart to federal due-process guarantee; prohibits deprivation of liberty or property without due course of law.

## Other Authorities

- **Fiat justitia ruat caelum** ("Let justice be done, though the heavens fall."): Quotation attributed to Lord Mansfield in *Somerset v. Stewart* (1772), symbolizing the judiciary's duty to uphold justice even against prevailing power.

# <u>To the honorable Justices of the Fifteenth Circuit Court of Appeals;</u>

"**Let justice be done, though the heavens fall (***Fiat justitia ruat caelum: Popularized by: Lord Mansfield, Chief Justice of England (1756–1788), who used it when abolishing slavery in England in Somerset v. Stewart (1772), the landmark decision that effectively declared human bondage incompatible with English common law. In this case, Lord Mansfield invoked this phrase to declare "**<u>that justice must prevail even if enforcing it would shake the established order of the world.</u>**"**).

Appellant **Neil George Switkowski** respectfully submits this Reply Brief in response to the Office of the Attorney General's Brief of Appellee, demonstrating that Appellee's participation in this matter remains constitutionally illegitimate, jurisdictionally unproven, and historically unjustified under *Loving v. Virginia*, 388 U.S. 1 (1967), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022).

Appellant appears not only as a father defending his constitutional rights, but also as a **licensed Private Investigator in the State of Texas (TX DPS-PSB #00005033)**, a licensee designed to enable the public (individual/ corporation) to uphold the law, protecting themselves from fraud and abuse against both private and public entities. That professional and moral duty compels Appellant to expose the systemic violations embedded within the State's Title IV-D enforcement program, a scheme that has allowed the Executive Branch to transform the family courts of Texas into a revenue-generating enterprise rather than a forum for actual justice.

Decades of data reveal that what began as a program to ensure the welfare of "abandoned children" has metastasized into an Executive branch bureaucratic machine that profits off the dissolution of families.

By monetizing separation, incentivizing custody battles, and rewarding the unconscionable expansion of Title IV-D "absent-parent" classifications, the State has turned the institution of marriage, <u>once the foundation of civic stability</u>, divorce, and post-divorce activities into a regulated commodity, making money off the chaos caused by the system itself. (*In commodity trading, profit depends on volatility, fluctuations in price driven by instability, scarcity, or conflict in the market. A calm, stable, self-sustaining market offers no opportunity for profit because there's nothing to exploit in the lack of chaos. The same perverse incentive*

8

*structure now governs the Title IV-D system: it profits not from stable families, but from their instability causing their destruction. The more conflict, arrears, and enforcement actions that can be incentivized in the state, the more the system pays itself.)*

In effect, the State has adopted the same model as a commodities trader, profiting from family volatility rather than stability, because only through conflict, arrears, and enforcement can the state generate the "returns" it depends on. Such a business model, one that profits from the tears of broken families, stands as both an ethical and moral failure of governance. It has produced no measurable improvement in the stability of the family unit, the health of children, or the preservation of marriage as a social institution. Instead, it sustains an industry that feeds on perpetual conflict, eroding public trust in both justice and the sanctity of parenthood. This is not merely a personal grievance but a systemic wrong affecting countless others similarly situated, many of whom have paid the ultimate price through despair and suicide born of an unconstitutional system that trades human suffering for revenue. There is no moral or honorable excuse for such a business model to exist.

This appeal therefore arises not only from personal injury, but from a professional and ethical obligation to confront a system that, by all measurable outcomes, has eroded the sanctity of marriage for profit, to the point that Texans today are marrying less, having fewer children, and living in fear of a process designed to break, not build, families. The Executive and Legislative branches have monetized the tears of the families they divided, and this case stands as a call to end that practice. ***Appellant comes before this Court not as a belligerent litigant seeking to destroy anything, but as a reformer seeking sanctuary in the House of Justice.***

As a Texas Private Investigator licensed and thus sworn to expose fraud and protect the public from systemic harm (after watching 12 years of divorces destroy families as an investigator, including his own). Appellant has both a legal and moral duty to bring these facts to light, not only on his own behalf, but on behalf of every other similarly situated family whose pain has been converted into profit sense the unconstitutional Title IV-D scheme was enacted.

9

# Statement of the Case- Background

This appeal arises from the Milam County 20th District Court's dismissal under Texas Family Code §231.016. Appellant challenges the State's jurisdiction and the constitutional validity of Title IV-D enforcement.

Appellant Switkowski has raised a consistent, escalating series of jurisdictional and constitutional challenges from inception to appeal. Each filing added a distinct legal layer the trial court was constitutionally required to address before ruling. The 20th Judicial District Court of Milam County instead issued a blanket dismissal under Tex. Fam. Code § 231.016, without ruling on standing, fraud, or the pending constitutional questions, and then ordered Appellant jailed for six months while the custodial parent (Archbold) continues to commit a **state-jail felony under Tex. Penal Code § 25.03** by withholding visitation.

# Chronological Summary of Preserved Challenges

**Reference to Clerk's Record (Procedural Chronology Source)**

See **Appendix A** for a complete chronological summary of preserved filings and issues raised below.

# Current Posture

Despite these preserved constitutional and jurisdictional challenges, the 20th Judicial District Court entered a **blanket dismissal** under § 231.016, without findings of fact, statutory analysis, or certification of standing, and issued an **incarceration order** against Appellant.

This constitutes a **violation of procedural due process, equal protection, and the right to petition**, as the court punished Appellant while failing to address:

1. The OAG's lack of jurisdiction and fraudulent representation of abandonment; and

2. Archbold's ongoing criminal interference with child visitation under 25.03 of the Texas penal code.

# Statement of Issues Presented

# Appellee's Core Arguments and Appellant's Rebuttals

A responsive pleading or motion cannot be construed as an admission of an opposing party's legal position. To hold otherwise would invert the most basic principles of adversarial litigation. The filing of a response merely joins issue for judicial determination; it does not concede the validity of the opposing claim. See *City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) ("The purpose of a response is to contest, not concede, jurisdictional or legal assertions."). Likewise, a litigant who challenges standing or authority preserves, rather than waives, those issues. See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (standing is a threshold question that must be proven before the court may proceed). Appellant's *Motion to Quash Involvement of the Office of the Attorney General Pending Judicial Certification of Standing and Historical Justification* expressly invoked that principle, requiring OAG to prove its own authority before further participation, not consenting to its appearance.

The OAG's filings invert the constitutional burden of proof. It is the government, not the citizen, that must establish jurisdiction before acting. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176–80 (1803), held that every exercise of power by the State must trace to lawful authority, and when such authority is questioned, it is the judiciary's duty, not discretion, to demand proof. Similarly, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), reaffirmed that the State bears the burden of justifying prior restraints on protected activities. Here, the OAG's presumption of standing without evidence reverses that burden and places Appellant in the unconstitutional posture of having to disprove an agency's unproven claim to power.

The Office of the Attorney General's Brief rests upon three primary contentions:
(1) that dismissal under Texas Family Code § 231.016 was proper because Appellant's pleadings were "frivolous" and barred by sovereign immunity;
(2) that the Office of the Attorney General possessed standing and statutory authority under Title IV-D to act in this matter; and

11

(3) that Appellant's constitutional challenges are non-justiciable and irrelevant to state family-law enforcement.

Each of these positions fails both legally and factually.

# 1. The Trial Court's Dismissal under § 231.016 Was Error as a Matter of Law

"A claim that challenges the constitutional validity of a statute cannot, by definition, be 'frivolous.' See Tex. Civ. Prac. & Rem. Code § 13.001(b); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)."

The trial court's reliance on *Texas Family Code* § 231.016 to dismiss Appellant's constitutional filings was legally erroneous. The dismissal rested solely on the pleadings; no evidentiary record exists. Consequently, the proper standard of review is **de novo**, not abuse of discretion. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007). In a de novo review, every well-pleaded fact must be taken as true, and all reasonable inferences resolved in favor of the non-movant.

The OAG incorrectly asserts that Appellant's pleadings were "frivolous." Constitutional claims are not frivolous merely because they are novel or challenge entrenched practice. See *Marbury v. Madison*, 5 U.S. 137 (1803) (judiciary's duty to test constitutionality of all governmental acts, especially when new rulings are handed down by higher courts). Appellant raised concrete constitutional and jurisdictional defects, precisely the type of questions that demand judicial examination rather than summary dismissal. The pleadings, supported by citations to *Loving v. Virginia*, *Bruen*, and *Yick Wo*, presented a fully reasoned framework; under Texas law, such issues cannot be declared frivolous per se.

The OAG further relies on § 231.016(3) (immunity prong), yet Appellant explicitly **waived all monetary relief** and sought only prospective declaratory and ultra vires relief. Under *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), suits for prospective compliance with constitutional limits fall within the ultra vires exception to sovereign immunity. Dismissal on immunity grounds therefore misapplied § 231.016. Moreover, *Ex parte Young*, 209 U.S. 123 (1908), forbids invocation of immunity when state officers act beyond statutory authority or in violation of constitutional rights.

The OAG's brief attempts to conflate "no private right under Title IV-D" with "no right to declaratory relief," but this is a category mistake. Appellant proceeds under the **state constitutional declaratory framework** and the **Uniform Declaratory Judgments Act**, not under a federal private-right claim.

# 1.1 Absence of a reporters record prevents a meaningful review dismissal

The Office of the Attorney General's argument that this Court must presume the trial court's ruling correct due to the absence of a reporter's record is misplaced. A dismissal under Texas Family Code § 231.016 is a legal determination rendered on the pleadings, not a factual finding requiring evidentiary review. As such, the appropriate standard is *de novo.* See *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("Whether a court has subject-matter jurisdiction is a question of law. When the trial court's jurisdictional ruling is based on the pleadings, appellate review is de novo."). *In reviewing such rulings, the appellate court must accept all well-pleaded jurisdictional facts as true and construe them in favor of the plaintiff. Because the trial court's dismissal rested entirely on the face of the pleadings, no presumption of regularity applies, and the lack of a reporter's record cannot bar review.* Indeed, the OAG, authorized by statute to obtain records without fee when acting within its jurisdiction, chose not to request or produce a transcript, underscoring that the dispositive issues here are purely legal, not factual.

The Office of the Attorney General's assertion that the absence of a reporter's record prevents meaningful review is also unfounded. As a Title IV-D agency, the OAG possesses full statutory authority under Tex. Fam. Code § 231.302(b) and Tex. Gov't Code § 2101.041 to compel production of records, transcripts, and judicial materials without cost to the State. Had the record supported the OAG's claims, it could have, and by statute, should have, procured those materials for inclusion in the appellate record. Its failure to do so creates a negative inference, that the omitted record would not have supported its position. A party cannot strategically withhold evidence it alone has the power to produce (FOR FREE) and then seek refuge in presumptions of correctness. Such conduct

undermines the integrity of appellate review and reflects an effort to shield administrative overreach from judicial scrutiny.

Moreover, every substantive filing, the *Motion to Dismiss for Gross Material Breach of Contract*, *Motion for Declaratory Relief*, *Motion to Quash OAG Participation*, and all twenty-seven *Judicial Notices of Fact*, was filed in writing and appears in the Clerk's Record. The OAG's attempt to rely on a missing transcript cannot erase the preserved written record or substitute for the constitutional issues raised therein. When the State itself has the power to obtain a record without fee but declines to do so, the presumption of regularity favors the non-movant.

For these reasons, the OAG's reliance on procedural omission is meritless, and the trial court's dismissal, resting on pleadings alone, remains subject to **de novo** review by this Court.

Furthermore, every constitutional defect and jurisdictional fact asserted by Appellant stands undisputed in the record. Under well-settled law, uncontroverted facts supported by the record are accepted as true for purposes of appellate review. See Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004) (undisputed facts in the record establish jurisdictional reality). The OAG filed no controverting affidavits, offered no evidence, and declined to obtain the very transcripts it could have secured at no cost under Tex. Fam. Code § 231.302(b). Its silence on each of these issues constitutes judicial admission and waiver. When a party fails to dispute material allegations properly preserved in the record, those allegations are deemed true as a matter of law.

Because every jurisdictional and constitutional issue raised by Appellant remains unrefuted, this Court must accept those facts as established and conduct its review de novo. The OAG's failure to contest them, despite having superior access to evidence, confirms that the trial court's dismissal under § 231.016 will not stand upon objective review.

# 2. The Office of the Attorney General Lacked Standing or Jurisdiction under Title IV-D

The Office of the Attorney General's assertion of standing fails at its foundation. Title IV-D and *Texas Family Code* §§ 231.101–.104 strictly limit state participation to cases in which a parent or caretaker has received public assistance or executed a formal assignment of support rights to the State. No such assignment, affidavit, or expenditure of public funds exists in this record. The OAG therefore lacked the statutory predicate necessary to invoke Title IV-D authority or to appear as a party in this cause.

By entering the case absent any qualifying trigger, the OAG acted outside the scope of its delegated authority and in violation of both statutory and constitutional limits. The agency's self-designation as a "Title IV-D case" does not create jurisdiction; it must be proven by evidence, not presumed by administrative convenience. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (standing is a component of subject-matter jurisdiction and cannot be waived or assumed). The absence of jurisdictional facts renders every subsequent action void ab initio.

The OAG's reliance on its "Title IV-D status" to obtain federal reimbursement under 42 U.S.C. § 658a constitutes a material misrepresentation of jurisdictional fact. The federal statute reimburses States for administrative costs **only** in cases where the State provides child-support services to recipients of public assistance or to voluntarily enrolled participants. Using that mechanism to classify private, self-supporting families as "Title IV-D cases" not only exceeds statutory authority but also fabricates the appearance of jurisdiction for financial gain. Such conduct is *ultra vires*, an action undertaken without legal power and void on its face.

Standing must be established by evidence, not by inference. The OAG presented no proof of an assignment of rights, no record of state expenditure, and no affidavit establishing a qualifying case type. It's standing thus rests solely on conclusory assertions, which are legally insufficient to confer jurisdiction. *See Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (standing cannot be conferred by consent or assumption).

15

Moreover, the agency's presence offends the separation of powers. By intervening in a purely private matter without a statutory predicate, the Executive Branch effectively conscripted the Judiciary into enforcing an administrative policy for financial reimbursement. That structure inverts constitutional design, transforming courts of justice into instruments of revenue collection. The Constitution does not permit such a distortion.

Accordingly, the OAG's filings, appearances, and pleadings in this case were *ultra vires* and void for lack of standing. Every order or judgment derived from that participation is constitutionally defective and must be vacated.

## 2.2 Fraud Upon the Court Through False Jurisdictional Representation

When the Office of the Attorney General applies for federal reimbursement under Title IV-D to justify its intervention in a private case where no public funds were expended, it misrepresents jurisdictional fact to both this Court and the United States. That act transforms a ministerial filing into a deliberate fraud upon the court. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (fraud upon the court arises when a party's conduct "prevents the judicial machinery from performing in the usual manner its impartial task of adjudging cases"). The OAG's entire business model depends on this misrepresentation, portraying constitutionally protected private families as "Title IV-D cases" so that it may seek federal incentive payments under 42 U.S.C. § 658a. Each false certification filed in the name of "the minor children" sets up a fiction to conceal a financial motive and corrupts the integrity of the judicial process itself.

A court's jurisdiction cannot be purchased through reimbursement forms or maintained through deceit. When an agency manufactures its standing for profit, every subsequent order becomes *fruit of that fraud*. The doctrine of *fraud upon the court* therefore compels vacatur of all judgments tainted by such deception. To permit this practice to continue would convert Texas courts into revenue engines rather than tribunals of justice, precisely the constitutional evil this Court is sworn to prevent.

# 2.3 Misrepresentation of Representation: The "Child's Interest" as a Jurisdictional Fraud

The Office of the Attorney General's own filings concede that it "represents the State of Texas" and **not** the custodial parent, the minor children, or any private party. This admission aligns with *Blessing v. Freestone*, 520 U.S. 329, 343–44 (1997), where the United States Supreme Court made clear that Title IV-D agencies exist solely to recover public funds disbursed through welfare programs and **do not** act as attorneys or fiduciaries for individual parents or children. Title IV-D creates no private right of action, no attorney-client relationship, and no duty of representation to any citizen. Its function is administrative cost recovery, nothing more.

Yet the OAG routinely enters courtrooms across Texas invoking the moral banner of "acting in the best interest of the child," while simultaneously certifying to the federal government that it acts only for the State's fiscal interest in reimbursement. That dual posture is not advocacy; it is **a deception**. It converts the courtroom into a theater of false representation, where the State speaks through the mask of compassion while its true client is the Treasury Department.

By claiming to stand for "the child" while federal reimbursement forms prove it stands only for the State, the OAG has institutionalized a **jurisdictional fraud**. Each time it invokes "Title IV-D authority" without an assignment of rights or expenditure of public funds, it commits the very act *Blessing* forbids: transforming private family life into a revenue stream. Such conduct is not merely unethical, it is **an abuse of power under color of law**, eroding public trust in the judiciary itself.

Courts cannot permit an agency to claim the child's heart while serving the State's unsatiable appetite for money. The Constitution demands candor; the OAG offers commerce. This contradiction strikes at the core of due process, for it forces Texas courts to preside not over justice, but over bookkeeping. The judiciary's duty is to correct this deception, not to perpetuate it.

"Ironically, the OAG's own citation to *Blessing v. Freestone* confirms its lack of standing; the agency admits it represents only the State's fiscal interests, not any party of record with a cognizable right before this Court."

17

## 2.4 Due Process and Constitutional Integrity

This pattern of deception by the Office of the Attorney General, claiming to represent "the child" while operating solely for the State's financial interest, strikes at the heart of due process itself. The Fourteenth Amendment guarantees that no person shall be deprived of life, liberty, or property **without due process of law**, and Article I, Sections 13 and 19 of the Texas Constitution echoes that same command. Due process demands both an impartial tribunal and a truthful adversary; the OAG has become neither. When an agency enters a courtroom under false pretenses of representation, its every act corrupts the proceeding ab initio.

The Texas judiciary has a solemn duty to ensure that proceedings are grounded in lawful jurisdiction, not administrative profiteering. Once the State's Title IV-D agency transforms a private domestic matter into a vehicle for federal reimbursement, the courtroom ceases to be a forum of justice and becomes a **revenue collection center**, a conversion wholly foreign to the Constitution's design. This is the very evil the separation of powers was intended to prevent: the Executive Branch invading the judicial domain to extract profit from the suffering of families.

Every order issued under such false jurisdiction is void, not voidable. As *Marbury v. Madison*, 5 U.S. 137 (1803), made clear, "a law repugnant to the Constitution is void." When jurisdiction itself is fabricated to secure federal funds, **the proceedings are not law, <u>they are larceny under color of law.</u>** The Court must therefore restore constitutional order by declaring that the OAG lacks standing in all cases where no public assistance was paid, no assignment of rights was executed, and no lawful Title IV-D trigger exists.

## 3. The Constitutional Issues Are Squarely Justiciable

Appellant's constitutional arguments are neither abstract nor collateral. Courts routinely adjudicate constitutional limits in domestic-relations matters. See, e.g., *Loving v. Virginia*, 388 U.S. 1 (1967) (marriage as a fundamental right, protected by Bruens historical precedent); *Zablocki v. Redhail*, 434 U.S. 374 (1978) (invalidating financial preconditions on the right to marry); *Troxel v. Granville*, 530 U.S. 57 (2000) (parental decision-making protected by substantive

due process); *Stanley v. Illinois*, 405 U.S. 645 (1972) (unwed father's rights); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (family integrity); *Palmore v. Sidoti*, 466 U.S. 429 (1984) (equal protection constraints in custody). And where enforcement risks incarceration, due process protections apply with special force. *Turner v. Rogers*, 564 U.S. 431, 447–48 (2011) (ability-to-pay findings and consideration of alternatives required before civil-contempt jailing in child-support cases).

*Loving* recognized marriage, and by extension its dissolution and its legal consequences thereof, as constitutionally protected. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), requires that any modern restriction on a protected activity be justified by a well-established historical tradition. The State identifies no tradition authorizing the **monetization** of post-divorce family relations or the conversion of private families into instruments for fiscal recovery. To the contrary, the historic line of cases limits state intrusion into marriage, parenting, and family autonomy.

Even apart from *Bruen*, Title IV-D enforcement as applied here offends due process. The OAG's participation proceeds without the statutory predicates that would confer lawful authority, and the enforcement posture culminated in incarceration without the *Turner*-mandated safeguards (individualized ability-to-pay findings and consideration of less restrictive alternatives). That is a justiciable constitutional defect, not a policy gripe. See also *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982) (heightened process where the State intrudes upon family integrity).

Equal protection concerns underscore the point. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), prohibits discriminatory enforcement of facially neutral schemes. The record shows a system that, in practice, targets a predictable class of non-custodial fathers for maximum collections while ignoring parallel violations (e.g., visitation interference, paternity fraud etc.), yielding asymmetric state action untethered to neutral adjudicative principles. That is a justiciable constitutional claim.

Finally, the remedy sought, prospective declaratory and prohibitory relief testing the OAG's authority and the constitutionality of its enforcement posture,

lies squarely within this Court's competence. Appellant does not seek to federalize domestic relations; he invokes the Judiciary's traditional role to enforce constitutional limits on state action regarding constitutionally protected activities. The OAG's participation in this case therefore exceeds both historical precedent and constitutional authority, and the issues are properly before this Court for decision.

Under *New York State Rifle & Pistol Association v. Bruen*, the judiciary cannot avoid review merely because a policy is longstanding; the burden lies with the State to demonstrate that its intrusion into marriage, divorce, and post-divorce activities is consistent with this Nation's historical tradition. The OAG's silence on this test concedes it cannot. Its only remaining strategy is to attack **form** rather than **function**, seeking refuge in procedure because the substance of its position cannot survive constitutional scrutiny.

# Argument: It is all Fruit of the Same Poisoned Tree
### The Poisoned Lineage of State-Controlled Marriage

The State's Title IV-D enforcement program is not a new invention; it is the latest manifestation of a long and unconstitutional tradition of governmental intrusion into the private sphere of marriage. Its entire framework descends from the same regulatory lineage that *Loving v. Virginia*, 388 U.S. 1 (1967), condemned when it struck down state laws forbidding interracial marriage. After *Loving*, the State again attempted to dictate the terms of marriage by prohibiting incarcerated individuals from marrying, a practice declared unconstitutional in *Turner v. Safley*, 482 U.S. 78 (1987). Undeterred, it sought to restrict the right of same-sex couples to marry, an effort overturned in *Obergefell v. Hodges*, 576 U.S. 644 (2015). Each of these decisions reaffirmed the same constitutional truth: **marriage and the intimate family relationships that bloom fruit from it are fundamental rights beyond the reach of ordinary legislative or executive branch incursion.**

Yet today, under the guise of the federal-state partnership created by Title IV-D, the Executive Branch (now with the full blessing of the Legislature) has again intruded into that sacred domain, this time not to forbid marriage, but to **control and commodify its dissolution.** By inserting itself into post-divorce

20

family life through **financial extraction and enforcement mechanisms disproportionately targeting men**, the Executive Branch has revived the same form of discriminatory enforcement condemned in *Yick Wo v. Hopkins*, **118 U.S. 356 (1886)**, a decision now nearly a century and a half old that has **never been overturned**. In *Yick Wo*, the Supreme Court held that a facially neutral law applied with discriminatory effect violates the Equal Protection Clause (for example: only men can be a victim of "Paternity Fraud," yet the state protects a fraud in the inducement when the individual was never made aware other partners were involved, however forced to pay for a child that is NOT theirs!).

The State's Title IV-D framework mirrors that constitutional defect: while written in gender-neutral terms, it functions in practice as an instrument of selective prosecution and revenue generation against a statistically identifiable class, non-custodial fathers, whose higher earnings make them more profitable enforcement targets. Through this disparate impact, the State perpetuates economic discrimination under the guise of child-support enforcement, converting courts of equity into tools of fiscal policy rather than instruments of justice.

Now, the same corrective duty it exercised in those landmark cases, to reaffirm that marriage, and everything that sprouts from that activity (including all legal and parental relations that arise from it) remain **constitutionally protected activities**. The Executive Branch cannot harvest revenue from the wreckage of families it helps fracture with policies meant to encourage the breakup of families. The Legislative Branch cannot authorize anyone to do something itself lacks the legal authority to confer to the Executive branch. The Fourteenth Amendment, as interpreted consistently by the Supreme Court, places the family beyond the State's profit motive. This Court must therefore recognize Title IV-D enforcement, as presently applied, for what it is: the **latest fruit of the same poisoned tree of racial hatred and bigotry** that has already been felled by constitutional law.

As a father of mixed-race children, Appellant stands in the same constitutional posture as Mr. Loving once did: defending the integrity of his family against a system that profits from its destruction. The Office of the Attorney General's Title IV-D enforcement model monetizes family separation, rewarding States for fabricating "abandonment" claims where none exists.

No constitutional government can profit from the destruction of the very families it claims to protect. **Any system built on a business model of profiteering from the tears of broken families is not a system of justice, but a machinery of destruction.** The continued operation of such a scheme desecrates both the rule of law and the moral foundation of the Republic. If this Court allows the State to harvest federal revenue from the suffering of its own citizens, then the Constitution becomes merely a social contract of convenience, void of principle and blind to conscience.

The OAG invokes United States v. Windsor, 570 U.S. 744 (2013), to claim "state primacy" over family law, implying constitutional insulation "Having accepted billions in federal incentive payments, the State cannot simultaneously claim constitutional primacy over domestic relations. By functioning as an administrative arm of the federal Title IV-D program, the Texas OAG has surrendered the very sovereignty it invokes to shield itself from scrutiny."

# The Federal Government's Lack of Jurisdiction Over Domestic Relations

The federal government has never possessed constitutional authority to regulate or intervene in matters of marriage, divorce, or family life. Domestic relations have always belonged exclusively to the States, a division of power recognized since the earliest days of the Republic. In *In re Burrus*, 136 U.S. 586 (1890), the Supreme Court declared unequivocally that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Nearly seventy years later, the Court reaffirmed that "there is no federal law of domestic relations." *DeSylva v. Ballentine*, 351 U.S. 570 (1956). Under the Tenth Amendment, any power not expressly delegated to the federal government is reserved to the States and the people. Regulation of the family, the most private and sacred human institution, was never delegated to Washington.

Unable to legislate directly in this field, Congress created a financial workaround in 1975 through the Social Security Act's Title IV-D program (42 U.S.C. § 651 et seq.). Title IV-D does not command the States to enforce child

support; rather, it **pays/ bribes** the state to do so. Using its Spending Clause authority (U.S. Const. art. I, § 8, cl. 1), Congress offered a federal reimbursement of **66 percent** of every dollar spent on "child-support enforcement" and further provided **bonus incentive payments** under 42 U.S.C. § 658a, calculated from the total amount collected by the State. This arrangement created what is, in essence, a federal bounty on collections system: States that collect the most money from separated parents receive the most federal funds starting the engine of "No-Fault Divorce."

This "financial partnership" is a constitutional evasion, not a lawful delegation of power. The Supreme Court has long warned that Congress may not use the Spending Clause to coerce States into carrying out federal objectives that lie beyond its enumerated powers. In *South Dakota v. Dole*, 483 U.S. 203 (1987), the Court recognized that financial inducements can cross the line into unconstitutional coercion when "pressure turns into compulsion." That principle was expanded in *New York v. United States*, 505 U.S. 144 (1992), where the Court held that "the Constitution simply does not give Congress the authority to require the States to regulate." The Court reaffirmed this limit in *Printz v. United States*, 521 U.S. 898 (1997), striking down another federal scheme that attempted to "commandeer the legislative processes of the States."

Title IV-D crosses precisely that forbidden line. By tying billions of dollars in reimbursements and incentive bonuses to a single outcome, "***maximum child-support collections at all cost!***" the federal government effectively dictates the priorities and policies of state family courts, a domain that the Constitution explicitly reserves to the States. Texas, by accepting these funds, has allowed its Executive Branch to become an administrative arm of federal policy in private domestic relations. The result is a hybrid structure that is neither state nor federal in origin but a financially engineered partnership operating entirely outside the framework of constitutional authority.

The federal government's intrusion into domestic relations cannot be legitimized by money. Congress cannot buy what the Constitution forbids it to possess. Any system of governance that relies on financial coercion to achieve jurisdiction over private families is, by definition, a system of corruption rather

than justice. Until this Court confronts the poisoned origin of that partnership, every judgment, order, and enforcement action flowing from it remains **fruit of the same forbidden tree.**

Moreover, this conduct constitutes a violation of the **Civil Rights Acts of 1866 and 1871** (The Civil Rights Act of 1871, also known as the Ku Klux Klan Act, aimed to enforce the provisions of the Fourteenth Amendment and protect African Americans from violence and discrimination, allowing them to seek legal relief against those violating their rights) , codified at **18 U.S.C. § 242** and **42 U.S.C. § 1983**, which prohibit the deprivation of constitutional rights under color of law.) By fabricating Title IV-D jurisdiction and using it to extract money or impose incarceration, the Office of the Attorney General acts under the color of both state and federal law to deprive parents of liberty and property without due process.

Without due process, the deeper constitutional violation arises from the fact that the Office of the Attorney General lacks any lawful jurisdiction to be involved in domestic-relations matters in the first place. Its mere participation transforms a private, constitutionally protected family dispute into an unlawful administrative proceeding, one that no federal or state statute can legitimately authorize. When multiple officials participate in this scheme, the pattern also satisfies **18 U.S.C. § 241**, conspiracy against rights. What began as a good faith effort to help states, "help children", has metastasized into administrative overreach that has matured into millions of systematic **color-of-law violations** and a State-sanctioned deprivation of civil rights motivated by financial incentive rather than lawful authority to recoup funds the state has paid out to support children on behalf of the tax payer.

These federal civil-rights statutes were born from the ashes of the Civil War to protect newly freed Black Americans from oppression by state and local officials who abused their power "under color of law." Remove the historical label and replace "freedmen" with "non-custodial parents," and the pattern is identical: a government using lawful authority to target a politically voiceless class for financial exploitation under the guise of justice.

The Civil Rights Acts of 1866 and 1871 established both civil and criminal remedies against any government officer who used state authority to violate constitutional rights. Though originally enacted to combat racial injustice and the tyranny of Reconstruction-era state governments, their protection extends to all citizens. They stand as a permanent safeguard against governmental abuse, ensuring that no public official, federal, state, or local, may weaponize lawful authority for unlawful ends. The same statutes that once shielded freedmen from state oppression now shield every parent whose liberty, property, or family has been wrongfully taken under the guise of administrative power.

The OAG's brief conceals three fatal contradictions: it seeks deference where only de novo review applies; it cites *Blessing* to assert jurisdiction when *Blessing* explicitly denies it; and it invokes *Windsor* to claim state primacy while ignoring *Loving* and *Obergefell*, which impose constitutional limits on that very primacy. Each of these contradictions reveals that the OAG's participation was **ultra vires**, unsupported by evidence, and contrary to both historical precedent and constitutional law.

# Certificate of Compliance (TRAP 9.4(i)(3))

I certify that this document contains approximately [5,975] 14-point Times New Romans Font words (excluding the caption, table of contents, index of authorities, certificate of service, and this certificate). Every section not included in this list was copy/ pasted into a word document and counted in order to get the number above. [See: Appellant's Motion for Leave to File Reply Brief Out of Time]

# Conclusion and Prayer for Relief

For the reasons stated throughout this Reply Brief, the Office of the Attorney General's continued participation in this case is constitutionally illegitimate, jurisdictionally unproven, and factually unsupported by any lawful Title IV-D trigger. The trial court's dismissal under Texas Family Code § 231.016 was erroneous as a matter of law and procedure. Appellant's pleadings raised purely legal questions, standing, jurisdiction, and constitutional validity, that cannot be dismissed as "frivolous" merely because they challenge entrenched state practices.

**Appellant respectfully prays that this Honorable Court:**

1. **Vacate the trial court's dismissal order** entered under Tex. Fam. Code § 231.016, as it failed to make findings of fact, address constitutional challenges, or determine standing before ordering confinement.

2. **Certify the constitutional questions** presented in this appeal to the Texas Supreme Court pursuant to Tex. R. App. P. 57.2.

3. **Recognize Appellant's preserved constitutional objections** to the State's enforcement model and affirm the availability of declaratory and ultra vires relief.

4. **Acknowledge the ongoing harm** caused by the State's selective enforcement of financial obligations while ignoring felony violations of visitation under Tex. Penal Code § 25.03, which constitutes both a due-process and equal-protection violation.

5. **Stay all enforcement proceedings** and contempt-related confinement pending final judicial certification and review of standing, to prevent further irreparable harm. (Appellant has had to move everything he owns back into storage (now homeless, again) waiting to go back to jail on the 27th of October 2025 for a contempt hearing that has not been stayed by the 20th District Court, Milam County TX.

6. Hold an ex parte evidentiary hearing for **Judicial Certification of Standing and Historical Justification**, ensuring that the OAG's participation is supported by record evidence rather than administrative presumption.

7. Declare that the Office of the Attorney General lacks standing to initiate or maintain enforcement proceedings absent proof of a valid assignment of rights or documented expenditure of public funds as required by Texas Family Code §§ 231.101–.104; and further, that all enforcement actions undertaken by the OAG which fail to meet this statutory threshold are hereby barred from continuation or initiation from the date of this Court's ruling forward.

8. **Require Specific Judicial Determination of Each Constitutional Defect Identified in Appendix B.**

   Appellant incorporates by reference **Appendix B – Constitutional Defects and Proposed Remedies**, which summarizes each preserved constitutional violation, the controlling legal authority, and the corresponding corrective action. Pursuant to *Marbury v. Madison*, 5 U.S. 137 (1803), and Texas Rule of Appellate Procedure 57.2, Appellant respectfully requests that this Court address each issue with specificity, either through written findings or by certification to the Texas Supreme Court. These matters are not hypothetical; they represent ongoing constitutional injuries arising from the State's enforcement practices and therefore demand direct judicial resolution to ensure compliance with both the Texas and United States Constitutions.

9. **Issue instructions to all trial courts on remand where the OAG is involved:**

   **Part A – Office of the Attorney General (OAG):**
   The trial court shall:
   (i) set a prompt evidentiary hearing to determine whether the OAG has in fact expended public funds or obtained a lawful assignment of rights or custody;
   (ii) require live testimony under oath and cross-examination from both the OAG and any designated caseworker to establish statutory compliance with Tex. Fam. Code §§ 231.101–104;
   (iii) enter written Findings of Fact and Conclusions of Law under Rules 296–299a detailing the evidence relied upon;
   (iv) treat OAG standing as a threshold issue that must be resolved before any enforcement or collection activity may proceed; and
   (v) bar reinstatement of enforcement mechanisms—including contempt, license suspension, or wage withholding—unless and until those findings affirm lawful jurisdiction, verified standing, and equitable compliance.

   **Part B – Custodial Parent (CP):**
   The trial court shall:
   (i) require the Custodial Parent to produce verified evidence that all court-ordered visitation, communication, and access have been honored and are

27

current;
(ii) enter written findings confirming full compliance with the Standard Possession Order or any modified order of the court;
(iii) treat ongoing or willful interference with possession as a material breach barring any enforcement of reciprocal financial obligations until cured; and
(iv) affirm that child-support enforcement and visitation enforcement are inseparable components of a single judicial duty—each must support the other, as both serve the child's best interest.

All parties must enter the House of Justice with clean hands, or not enter at all.

10. **This case presents a historically significant constitutional challenge**: one that questions the lawful boundaries of state authority within domestic relations and the proper separation of powers under both the Texas and United States Constitutions. It implicates issues that reach beyond the immediate parties, touching on centuries-old principles of liberty, due process, and the limitation of government power first articulated in our founding jurisprudence. Should this Honorable Court determine that any issue raised herein requires further clarification, or that oral argument would assist in resolving the constitutional questions presented, Appellant stands fully prepared to provide such clarification or appear for oral argument at the Court's discretionary convenience.

This case presents an opportunity to reaffirm that **no constitutional government may profit from the destruction of the very families it collects taxes to protect**. The judiciary must now, as it did in *Loving* and *Bruen*, restore the constitutional limits on executive power and protect the sanctity of private family life from financial exploitation.

**Appellant therefore respectfully requests that this Court vacate the dismissal, certify the constitutional questions, and stay enforcement pending full judicial review, letting justice be done, though the heavens fall.**

**Respectfully submitted,**

*Neil Switkowski* 10/20/2025

**Neil George Switkowski**

Appellant Pro Se

2203 Post Oak Rd

Rockdale, Texas 76567

E-mail: ns512atx@gmail.com

Date: October 20, 2025

# Certificate of Service

I certify that on October 20, 2025, a true and correct copy of this Motion was served by electronic service through the Court's e-filing system.

*Neil Switkowski*

Neil George Switkowski

**Mr. Deterrean Gamble**
**Assistant Attorney General**
**Child Support Division**
**P. O. Box 12017, Capitol Station**
**Austin, TX 78711-2017**
**\* DELIVERED VIA E-MAIL \***

**Ms. Courtney Sinclair Archbold**
**227 E Bell Ave.**
**Rockdale, TX 76567**
**\* DELIVERED VIA E-MAIL \***

# Appendix A: Chronological Summary of Preserved Challenges

The following chronological summary is derived directly from the *Milam County Clerk Records – Court of Appeals Submission Dated August 21, 2025*, which compiles all filings, motions, judicial notices, and orders entered under Cause No. CV40037 in the 20th Judicial District Court of Milam County, Texas. This record, transmitted to the Fifteenth Court of Appeals via the Third Court of Appeals, reflects the complete procedural history and preservation of issues for appellate review. Each entry below is identified by its date, title, and filing party, with concise explanatory notes summarizing its legal purpose and relevance to the constitutional and jurisdictional questions now before this Court.

**"This chronology demonstrates Appellant's consistent effort to challenge jurisdiction, preserve constitutional objections, and seek judicial clarification at every procedural stage"**

**April 23, 2021 – Final Decree of Divorce**
• Established child support and visitation terms under a binding contractual decree.
• Serves as the controlling contract defining the rights and obligations of both parties.

**October 30, 2024 – Motion for Enforcement of Child Support (Filed by Office of the Attorney General)**
• The OAG initiated enforcement proceedings under *Cause No. CV40037* seeking collection of alleged arrears.
• Filing marked the beginning of the current chain of enforcement actions now under appellate review.

**December 2, 2024 – Service of Citation and Motion for Enforcement Completed on Appellant**
• Appellant was formally served with the OAG's enforcement motion and citation.
• This date triggers the 20-day response period under Tex. R. Civ. P. 99(b), setting the response deadline for December 23, 2024.

**December 23, 2024 – Motion to Dismiss for Gross Material Breach of Contract (Filed by Appellant Neil G. Switkowski)**

• Filed within the 20-day response window following service of citation.

• Asserts that Archbold's willful denial of visitation constitutes a state-jail felony under Penal Code §25.03.

• Argues that a party in felony violation cannot enforce a civil contract or invoke court aid while in default.

**January 6, 2025 – Motion for Declaratory Relief and to Dismiss Child Support Enforcement (Switkowski)**

• Challenges continuing post-divorce jurisdiction and enforcement absent mutual consent.

• Invokes constitutional protection for marriage and dissolution under *Loving*, *Yick Wo*, and *Bruen*.

**January 6, 2025 – Motion to Reform Child Support Calculations and Enforcement (Switkowski)**

• Proposes an expense-based calculation model tied to Tex. Fam. Code §154.001(a).

• Argues that current Title IV-D practices incentivize conflict and violate due process.

**January 6, 2025 – Motion for Sanctions Against the Office of the Attorney General (Switkowski)**

• Raises clean-hands and public-policy violations for aiding a party in felony violation.

• Identifies Title IV-D financial incentives as an unconstitutional conflict of interest.

**February 5, 2025 – Motion for Default Judgment for Failure to Produce Discovery (Switkowski)**

• Notes Archbold's continued refusal to provide visitation records.

• Requests adverse inference and judgment by default.

**February 5, 2025 – Reset Order on Motion for Enforcement and Suit for Modification of Support (Court)**

• Court resets pending enforcement hearing on OAG's modification suit.

• Maintains temporary enforcement posture pending further filings.

**March 3, 2025 – Response to OAG Motion to Dismiss (Switkowski)**

• Contests OAG standing and authority absent certification of statutory jurisdiction.

• Argues that Title IV-D actions in non-assistance cases constitute fraud upon the court.

**March 3, 2025 – Response to OAG General Denial (Switkowski)**

• Rebuts OAG's blanket denial and insists on judicial certification of constitutional questions.

• Preserves all procedural and substantive objections for appellate review.

**March 27, 2025 – Motion for Default Judgment for Willful Violation (Switkowski)**

• Cites Archbold's ongoing obstruction of visitation as repeated contempt of decree.

• Requests judgment recognizing pattern of felony interference under §25.03.

**March 27, 2025 – Response to Petitioner's Motion to Strike and Request for Sanctions (Archbold/OAG)**

• Seeks dismissal of Switkowski's filings as frivolous or repetitive.

• Requests court sanctions and limitation on future filings.

**May 1, 2025 – Notice of Constitutional Challenge (Switkowski)**

• Filed under Gov't Code §402.010 to challenge Title IV-D and Fam. Code §§154 & 157.

• Notifies Attorney General of statewide constitutional questions on jurisdiction and funding.

**May 1, 2025 – Amended Motion to Reform Child Support Calculations and Enforcement (Switkowski)**

• Updates expense-based formula and eliminates income percentage bias.

• Offers model for constitutional compliance and fiduciary neutrality.

**May 1, 2025 – Motion for Judicial Certification, Stay of Proceedings, and Temporary Injunction (Switkowski)**

• Invokes Tex. R. App. P. 57.2 requesting certification to the Texas Supreme Court.

• Seeks stay of all enforcement and incarceration pending resolution of constitutional questions.

**May 20, 2025 – Order Enforcing Child Support Obligation (Court)**

• Finds Switkowski in contempt for arrears and sets purge conditions.

• Entry forms the basis of the current appeal to the Third Court of Appeals.

**May 28, 2025 – Judicial Notice: Live and Specific Constitutional Controversy (Switkowski)**

• Asserts live constitutional dispute subject to appellate review.

• Establishes standing for direct judicial consideration.

**May 28, 2025 – Judicial Notice: OAG Does Not Represent the Best Interest of the Child (Switkowski)**

• Challenges OAG's fiduciary legitimacy and statutory role in non-assistance cases.

• Argues that enforcement actions serve state profit, not child welfare.

**May 28, 2025 – Judicial Notice: OAG Is a Financially Interested Party (Switkowski)**

• Demonstrates OAG's dependency on federal Title IV-D reimbursements.

• Establishes constitutional conflict of interest undermining neutrality.

**June 13 2025 – Notice of Appeal Filed in Court of Appeals**

• Perfects appeal to the Third Court of Appeals under Cause No. 03-25-00416-CV.

• Preserves all constitutional and procedural challenges for higher review.

**June 17 2025 – Appearance of Counsel Filed**

• Records formal representation and contact information for Appellant.

**June 25 2025 – Docketing Statement Filed**

• Provides jurisdictional basis and issues on appeal for COA docketing.

**June 27 2025 – Document Filed**

• Supplemental material entered to complete record for appellate submission.

**July 18 2025 – Clerk's Record Filed with Court of Appeals**

• Milam County District Clerk transmits certified record to the Third Court of Appeals.

**July 21 2025 – Fee Paid**

• Payment confirmation for appellate filing fees.

**July 24 2025 – Notice of Late Record**

• Court issues notice to court reporter for delayed reporter's record.

**July 25 2025 – Court Reporter Notice of Record Status**

• Reporter advises no payment arrangements were made for transcript preparation.

**August 25 2025 – Brief Received (Oral Argument Requested)**

• Appellant's brief accepted for filing pending final verification.

**August 27 2025 – Motion to Quash Filed (Appellant)**

• Challenges OAG standing and participation absent judicial certification of authority.

**August 28 2025 – Appellant's Brief Filed (Oral Argument Requested)**

• Consolidates constitutional arguments under *Loving*, *Bruen*, and *Yick Wo*.
• Requests certification of constitutional questions to the Texas Supreme Court.

**September 2 2025 – Supplemental Clerk's Record Filed**

• Includes additional motions and judicial notices for complete appellate review.

**September 23 2025 – Appellee's Brief Filed (Office of the Attorney General)**

• Defends trial court dismissal under Tex. Fam. Code § 231.016.
• Claims OAG acted within statutory authority and Appellant lacks standing.

**September 24 2025 – Letter Issued by the Court**

• Acknowledges receipt of Appellee's brief and sets response timeline.

**September 26 2025 – Letter Filed**

• Administrative entry confirming notice of Appellee filings.

**September 29 2025 – Appellee's Brief Filed (Courtney Sinclair Archbold)**

• Asserts Appellant's filings were unserved and frivolous.

• Defends enforcement order and requests affirmance.

**September 30 2025 – Supplemental Clerk's Record Filed**

• Adds certified orders and trial motions omitted from initial record.

**October 2 2025 – Appellee's Brief Filed (Oral Argument Not Requested)**

• Final version of OAG's brief entered into record.

**October 13 2025 – Response Filed (Appellant – 15th COA Response)**

• Addresses transfer status and procedural issues arising from § 27a letter.

**October 15 2025 – Case Transferred to Fifteenth Court of Appeals**

• Transfer order issued under Tex. R. App. P. 27a.

• Case renumbered **15-25-00155-CV** and jurisdiction accepted by Fifteenth Court.

**October 15 2025 – Order Entered (Transfer Order and Notice)**

• Official order finalizing transfer and notifying all parties.

**October 20 2025 – Appellant's Reply Brief Filed (Pending Acceptance)**

• Seeks reversal of § 231.016 dismissal and certification of constitutional questions.

• Requests stay of enforcement and acknowledges systemic Title IV-D fraud impacting similarly situated citizens.

"From the initial Motion to Dismiss for Gross Material Breach of Contract through the current appeal before the Fifteenth Court, Appellant has raised a single continuous jurisdictional question: **how may the Office of the Attorney General assert authority in a private contract dispute when neither party has assigned rights under Tex. Fam. Code §§ 231.101 or 231.104, no public funds have been expended, and the participating party was herself in felony violation of § 25.03?**

Each successive filing, from motions for sanctions, declaratory relief, and reform, through discovery enforcement has consistently preserved this challenge and documented the OAG's ongoing failure to answer. The record therefore

establishes both factual and constitutional fraud: a party in breach and a state agency acting without jurisdiction joined in a profit-driven enterprise under Title IV-D."

# Appendix B: Constitutional Defects and Proposed Remedies

For the Court's convenience and in the interest of judicial efficiency, Appellant provides in **Appendix B** a comprehensive matrix of the **constitutional defects, statutory conflicts, and proposed remedies** preserved throughout the record. Each item in Appendix B corresponds to a live issue presented in this appeal and requires the Court's **specific determination or certification** under *Marbury v. Madison*, 5 U.S. 137 (1803), and Tex. R. App. P. 57.2. These issues are neither abstract nor academic—they are direct challenges to the statutory framework and enforcement mechanisms currently depriving Appellant, and others similarly situated, of constitutional protections. Accordingly, Appellant respectfully requests that this Court **address each defect and proposed remedy with particularity**, either through express findings or by certification to the Texas Supreme Court for definitive resolution.

| Issue / Constitutional Defect | Legal Authority & Statutory Context | Proposed Remedy or Corrective Action |
|---|---|---|
| **1. Unproven OAG Standing** | Tex. Fam. Code §§ 231.101 & 231.104 (limit standing to cases involving public assistance or abandonment); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) | **Judicial Certification of Standing (Ex Parte Hearing).** Before further participation, OAG must prove public-fund expenditure or assignment of rights; otherwise, all filings are void *ab initio*. |
| **2. Fraudulent Title IV-D** | 42 U.S.C. § 654 (federal IV-D plan requirements); 18 U.S.C. § 1001 (false statements); *Hazel-Atlas* | **Immediate Review and Notice to Federal Authorities.** If no public funds were used, certify |

37

| Issue / Constitutional Defect | Legal Authority & Statutory Context | Proposed Remedy or Corrective Action |
|---|---|---|
| **Reimbursement Claims** | *Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) | fraud upon the U.S. and order recoupment of improper claims. |
| **3. Selective Enforcement of Orders (Violation of Equal Protection)** | *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); Tex. Const. Art. I § 3 | **Equal Priority Enforcement Mandate.** Address the disparity in enforcement against males. Require courts to enforce visitation and financial orders equally or stay all enforcement until both are addressed. |
| **4. Post-Decree Jurisdictional Overreach** | *Marbury v. Madison*, 5 U.S. 137 (1803); Tex. Const. Art. I §§ 13 & 19 | **Jurisdictional Termination Clause.** Court jurisdiction ends with divorce decree unless both parties contractually consent to continued supervision or arbitration. |
| **5. Profit-Driven Incentive Structure (Title IV-D)** | 42 U.S.C. § 658a (incentive payments); Tex. Fam. Code Ch. 231 | **Expense-Based Child-Support Model.** Adopt Appellant's verified-expense system aligning support with § 154.001(a) ("reasonable and necessary needs"), eliminating federal kickbacks and unjust enrichment of the CP post divorce. |
| **6. Unconstitutional Historical Basis of** | *Loving v. Virginia*, 388 U.S. 1 (1967); *N.Y. State* | **Certification of Historical Justification Question.** Under |

38

| Issue / Constitutional Defect | Legal Authority & Statutory Context | Proposed Remedy or Corrective Action |
|---|---|---|
| **Marriage Regulation** | *Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022) | *Bruen*, require State to prove historical authority to regulate marriage and post-divorce relations; if none, declare practice unconstitutional. |
| **7. Parental Alienation / Interference with Custody (§ 25.03)** | Tex. Penal Code § 25.03 (Interference with Child Custody); *Hilliard v. State*, 881 S.W.2d 917 (Tex. App.—Fort Worth 1994) | **Recognition of New Civil Tort for Parental Alienation = Loss of Consortium.** Creates civil remedy for parents denied access by criminally interfering party. |
| **8. Paternity Fraud / False Parentage Claims** | Tex. Fam. Code §§ 160.633-.637; Tex. Civ. Prac. & Rem. Code § 12.002; Tex. Penal Code § 37.10 | **Civil & Criminal Fraud-Upon-the-Court Recognition.** Intentional misrepresentation of paternity for financial gain treated as fraud and subject to sanctions and prosecution. |
| **9. Misclassification of Support as Non-Debt** | Tex. Sup. Ct. rulings ("support is obligation, not debt"); 28 U.S.C. § 3002(15); 15 U.S.C. § 1692 (FDCPA) | **Debt-Collection Reform.** When CP fronts payment and seeks reimbursement, it becomes a debt subject to FDCPA and Texas Debt-Collection protections; civil contempt inapplicable. |
| **10. Ongoing Due-Process Violations** | U.S. Const. Amend. V & XIV; Tex. Const. Art. I §§ | **Immediate Stay of Proceedings and Vacatur of Contempt** |

| Issue / Constitutional Defect | Legal Authority & Statutory Context | Proposed Remedy or Corrective Action |
|---|---|---|
| **(Blanket Dismissal and Incarceration)** | 13 & 19; *Ex parte Shaffer*, 649 S.W.2d 300 (Tex. 1983) | **Orders.** No enforcement or incarceration until constitutional questions are resolved and standing certified. |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107067287
Filing Code Description: Other Brief
Filing Description: APPELLANT'S REPLY BRIEF TO THE OFFICE OF THE ATTORNEY GENERAL'S BRIEF OF APPELLEE
Status as of 10/21/2025 7:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| COURTNEY ARCHBOLD | | Courtneyarchbold@gmail.com | 10/20/2025 5:21:02 PM | SENT |
| NEIL G.SWITKOWSKI | | ns512atx@gmail.com | 10/20/2025 5:21:02 PM | SENT |
| Deterrean Gamble | | deterrean.gamble@oag.texas.gov | 10/20/2025 5:21:02 PM | SENT |